UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TERI L. NELSON,

      Plaintiff,

 v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

      Defendant.

Case No. 3:16-cv-05655-KLS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

   Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds that defendant's decision to deny benefits should be reversed, and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

   On September 13, 2012, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications that she became disabled beginning December 31, 2006. Dkt. 10, Administrative Record (AR), 11. Both applications were denied on initial administrative review and on reconsideration. *Id.* At a hearing held before an

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

ORDER - 1

Administrative Law Judge (ALJ), plaintiff appeared and testified, as did a vocational expert. AR 29-79. Also at the hearing, plaintiff amended her alleged onset date of disability to November 8, 2011. AR 11.

In a written decision dated February 27, 2015, the ALJ found that plaintiff could perform both her past relevant work and other jobs existing in significant numbers in the national economy, and therefore that she was not disabled. AR 11-23. On June 27, 2016, the Appeals Council denied plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner, which plaintiff then appealed in a complaint with this Court on July 26, 2016. AR 1; Dkt. 1-3; 20 C.F.R. § 404.981, § 416.1481.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred:

(1) in evaluating the medical opinion evidence from Terilee Wingate, Ph.D., Dan Neims, Psy.D., and Brian VanFossen, Ph.D.;

(2) in discounting plaintiff's credibility;

(3) in assessing plaintiff's residual functional capacity (RFC); and

(4) in finding plaintiff could perform other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court agrees the ALJ erred in evaluating the medical opinion evidence from Drs. Wingate, Neims, and VanFossen, and thus in assessing plaintiff's RFC and in finding she can perform other jobs existing in significant numbers in the national economy, but finds that remand for further administrative proceedings, rather than an award of benefits, is warranted.

## DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the

ORDER - 2

"proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I.   The ALJ's Evaluation of the Medical Opinion Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions

ORDER - 3

solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need

not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

A.   Dr. Wingate

With respect to the opinion evidence from Dr. Wingate the ALJ observed:

> [T]he claimant participated in a consultative psychological examination on April 25, 2013, with Terilee Wingate, PhD. At the outset of her exam report, Dr. Wingate notes the evaluation was based on the claimant's self-report and had not been verified with a third party. The claimant acknowledge she was not taking medications at the time of [sic] exam. Dr. Wingate noted the claimant had an "emotional response" to cognitive testing, including a WMS-4 test of memory, was tearful during the clinical interview, seemed depressed and became overwhelmed and panicked with novel tasks and external pressure. On the WMS-4, the claimant scored in the borderline to extremely low range of all memory indices. It was also noted that the claimant reported geteting [sic] anxious when asked to interact with co-workers or members of the public, and her global assessment of functioning (GAF) was scored at 45[2] by Dr. Wingate.

AR 18-19 (internal citations omitted). The ALJ then gave that opinion evidence "[m]inimal weight," explaining:

---

[2] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of the individual's overall level of functioning.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) (DSM-IV-TR) at 32); *see also Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." *Pisciotta*, 500 F.3d at 1076 n.1 (quoting DSM-IV-TR at 34); *see also Cox v. Astrue*, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.")

ORDER - 5

>As mentioned at the outset, Dr. Wingate did not have a medical history to review, and her opinions were based substantially on the subjective reports of her claimant. Contrary to her presentation at the consultative examination, the claimant's longitudinal medical history has noted her affective difficulties to be primarily related to her anti-seizure medications, and that her mood, affect, behavior, and judgment has generally been within normal limits at her medical appointments. The claimant's performance on the WMS-4 was also wholly inconsistent with the longitudinal records previously referenced, and the undersigned has reason to question whether a good faith effort was made on psychometric testing. Dr. Wingate's observation that the claimant appeared capable of managing financial benefits in her own interest also appears to be contradictory to the bulk of her findings concerning the claimant's concentration and memory. Giving the benefit of the doubt to the claimant's subjective complaints, the undersigned finds it appropriate to restrict the claimant to the mental demands of simple, routine tasks, with no requirement for public contact, and superficial co-worker interaction.

AR 19 (internal citations omitted). Plaintiff argues and the Court agrees that the ALJ did not provide valid reasons for rejecting Dr. Wingate's opinion.

First, as plaintiff points out, Dr. Wingate did have medical records to review, describing them in some detail. AR 508. Second, the record does not support the ALJ's determination that Dr. Wingate's opinion was "based substantially" on plaintiff's subjective reporting. Indeed, Dr. Wingate's observations, and the mental status examination and psychological testing she performed, during the evaluation reveal a number of significant abnormalities. *See* AR 510-12; *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (an opinion that is based on clinical observations supporting a mental health diagnosis is competent evidence); *Clester v. Apfel*, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) ("The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury."). Further, there is nothing in Dr. Wingate's evaluation report to indicate she gave greater emphasis to what plaintiff reported than to her own personal observations or the other objective findings she obtained. AR 512; *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("[W]hen an opinion is not more

ORDER - 6

heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.").

Third, to the extent plaintiff's "affective difficulties" could be said to relate in some way to her anti-seizure medications, the record indicates plaintiff stopped taking those medications at least a year prior to her alleged onset date of disability, and nearly three years prior to Dr. Wingate's evaluation. *See* AR 422-23, 481. Nevertheless, Dr. Wingate still found plaintiff had significant mental health symptoms and limitations. Fourth, while the record does show that plaintiff was noted to have unremarkable mental health findings during medical appointments, as plaintiff again points out those appointments were not focused on her mental impairments, unlike Dr. Wingate – and, as discussed below, Dr. Neims and Dr. VanFossen – all of whom are mental health specialists and noted a number of mental health abnormalities during their evaluations of her. *See* AR  392-97, 450, 455-56, 468-69, 532, 537-48; *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (more deference is given to the opinion of a specialist about medical issues related to his or her area of specialty).

Fifth, the ALJ failed to explain why she had reason to question whether plaintiff made a good faith effort on testing, particularly given that Dr. Wingate specifically noted that plaintiff "appeared to offer her best effort," and therefore the test results appeared "to be a valid estimate of her memory functioning." AR 511. Sixth, and finally, although Dr. Wingate's statement that plaintiff seemed capable of managing financial benefits in her own best interests may to some extent conflict with the testing indicating she was in the "borderline" range of attention, it does not implicate the other findings and conclusions Dr. Wingate offered. AR 512. The Court further notes Dr. Neims found plaintiff's concentration also to be poor, and Dr. VanFossen's evaluation report indicates less than perfect concentration as well. AR 397, 542. As such, none of the ALJ's

ORDER - 7

reasons for rejecting Dr. Wingate's opinion can be upheld.

B.  Dr. Neims

In regard to the opinion evidence from Dr. Neims, the ALJ found:

> Partial weight is given to the November 5, 2013 psychological evaluation for the Washington State Department of Social and Health Services (DSHS) by Dan Neims, PsyD. Dr. Neims' observation that the claimant did not display evidence of a long term memory impairment, had normative thought process, and showed dramatic symptom endorsement is consistent with the longitudinal observations of the claimant's treating medical providers. However, his opinion that the claimant would have numerous marked limitations in the domains of mental functioning appears to be based primarily on her subjective complaints. Furthermore, his opinion that the claimant could not perform substantial gainful activity is an issue reserved to the Commissioner of Social Security.

AR 21 (internal citations omitted). Except with respect to the issue of whether she is capable of performing substantial gainful activity,[3] again the Court agrees with plaintiff that the ALJ failed to provide valid reasons for rejecting this opinion evidence. As with that from Dr. Wingate, Dr. Neims' evaluation report gives no indication that he relied more heavily on plaintiff's subjective reporting than on the various abnormal objective findings he obtained during the mental status examination he performed. AR 537-48; *see also Ghanim*, 763 F.3d at 1162; *Sprague*, 812 F.2d at 1232; *Clester*, 70 F.Supp.2d at 990. For the same reasons discussed above, furthermore, the Court finds greater weight should be given to the opinions of the three examining psychologists in this case than to the longitudinal treatment record, at least in terms of plaintiff's mental health symptoms and limitations. Thus, here too the ALJ erred.

C.  Dr. VanFossen

As did Dr. Neims in November 2013, in November 2011, Dr. VanFossen performed a

---

[3] "[T]he ultimate determination" as to whether a claimant is disabled is reserved to the Commisisoner, and thus "[a] statement by a medical source that [the claimant is] 'disabled' or 'unable to work' does not mean" that he or she will be found to be disabled. 20 C.F.R. § 416.912(b)(7), § 416.927(e)(1); *see also Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (an ALJ is not bound by medical opinions on the ultimate issue of disability).

ORDER - 8

psychological evaluation for DSHS as well. During that evaluation, Dr. VanFossen observed lability of mood, depression, and difficulty regulating emotions. AR 392; *see also* AR 393 (noting further that the "[c]laimant appears significantly more distressed than baseline due to emotional dysregulation [sic]."). Although Dr. VanFossen obtained some normal findings on plaintiff's mental status examination, he also noted she was tangential and pressured, with dirty clothes and unkempt hair, a "[d]ramatic presentation" and "very labile emotions," poor insight, and a "[d]epressed, frustrated" mood and affect." AR 396-97. In addition, plaintiff had "[v]ery pressured" and rapid speech and was "[v]ery difficult to redirect." AR 397.

Dr. VanFossen assessed plaintiff with a GAF score of 41, based on both his interview of her and the results of her mental status examination. AR 393. He went on to opine that plaintiff "would likely be unable to interaction [sic] appropriately in a work situation, [and] would have difficulty interacting appropriately for extended periods of time socially." *Id.* The ALJ did not address this opinion evidence in her decision. That was error, as plaintiff argues, given its obvious significant probative value. *Vincent*, 739 F.2d at 1394-95 (an ALJ must only explain why "significant probative evidence has been rejected"). Accordingly, this constitutes another basis for reversing the ALJ's decision.

II.     The ALJ's Assessment of Plaintiff's RFC

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* A claimant's RFC assessment is used at step four of the process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. SSR 96-8p, 1996 WL 374184, at

\*2. It is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at \*7.

In terms of plaintiff's mental RFC, the ALJ limited her to simple, routine tasks, with no requirement for direct public contact, and only superficial interaction with co-workers. AR 17. But because as discussed above the ALJ erred in failing to properly evaluate the medical opinion evidence from Dr. Wingate, Dr. Neims, and Dr. VanFossen, each of whom found plaintiff was more significantly limited than the ALJ, the ALJ's RFC assessment cannot be said to completely and accurately describe all of plaintiff's limitations.

III.    The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's

testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

The ALJ found plaintiff could perform other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered at the hearing in response to a hypothetical question concerning an individual with the same age, education, work experience and RFC as plaintiff. AR 22-23. But because as discussed above the ALJ erred in assessing plaintiff's RFC, the hypothetical question the ALJ posed to the vocational expert – and thus that expert's testimony and the ALJ's reliance thereon – also cannot be said to be supported by substantial evidence or free of error.

III.     Remand for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved

ORDER - 11

before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain in regard to the medical opinion evidence, plaintiff's RFC, and his ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

Plaintiff argues remand for an award of benefits is proper in light of the ALJ's errors in evaluating the medical opinion evidence from Drs. Wingate, Neims, and VanFossen, which she asserts should be credited as true. Where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." *Lester*, 81 F.3d at 834 (citation omitted). On the other hand, remand for further proceedings is appropriate "when, even though all conditions of the [*Smolen*] credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014). Here, it is not entirely clear that the ALJ would be required to adopt all of the functional limitations the three medical sources assessed on remand. Nor has plaintiff shown the record necessarily supports a finding that she would be off-task for more than 15% of the workday, or that she would miss more than one day of work per month, which plaintiff notes the vocational expert testified would preclude gainful employment. Dkt. 12, p. 18 (citing AR 78). Accordingly, the Court declines the apply the credit as true rule in this case or find plaintiff to be disabled at step five at this time.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and

ORDER - 12

this matter is REMANDED for further administrative proceedings.

DATED this 7th day of February, 2017.

Karen L. Strombom
United States Magistrate Judge

ORDER - 13